IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-309-D

| | | |
|---|---|---|
| KATRINA HAYES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| BILL BUTLER, | ) | |
| | ) | |
| Defendant. | ) | |

On July 20, 2017, Deputy U.S. Marshal Bill Butler ("Butler" or "defendant") moved to dismiss Katrina Hayes's ("Hayes" or "plaintiff") request for a no-contact order [D.E. 11] and filed a memorandum of law in support [D.E. 12]. On August 10, 2017, Hayes responded in opposition [D.E. 14]. As explained below, the court grants Butler's motion to dismiss.

I.

On October 14, 2016, Hayes sued the Cumberland County Board of Education and other defendants alleging violations of federal law. See Hayes v. Cumberland Cty. Bd. of Educ., et al; 5:16-CV-853-FL ("Hayes I" [D.E. 1]). On March 13, 2017, the court dismissed Hayes's case for lack of subject-matter jurisdiction and failure to state a claim. See Hayes v. Cumberland Cty. Bd. of Educ., et al; 5:16-CV-853-FL, 2017 WL 979025 (E.D.N.C. Mar. 13, 2017) (unpublished). On April 4, 2017, Hayes threatened the Clerk of Court for the Eastern District of North Carolina. On April 4, 2017, Hayes's threat was forwarded to Butler in his capacity as Judicial Security Inspector for the United States Marshals Service. [D.E.12], Butler Aff., ¶ 2.

On April 5, 2017, the court entered a text order that read:

> TEXT ORDER - the court is in receipt of multiple voice messages directed to chambers staff from plaintiff requesting ex parte communication and hearing with

the court about this case and the parties in this case. Plaintiff is ADMONISHED that any communications with the court regarding the case or the parties must be made through filings or statements on the record through the clerk's office, in accordance with the Federal Rules of Civil Procedure and the rules and preferences of the court. Plaintiff is DIRECTED to cease telephone calls with chambers and to direct any filings or inquiries regarding the case or parties to the clerk's office in accordance with applicable rules. The court DIRECTS the clerk to serve plaintiff a copy of this order by US Mail. In addition, the court DIRECTS the United States Marshal to serve personally a copy of this order on plaintiff. Signed by District Judge Louise Wood Flanagan on 4/5/2017.

Hayes I, no docket entry (emphasis in original).

On April 5, 2017, Butler and the chief deputy marshal attempted to serve Hayes with a copy of the text order at her residence in Cary, North Carolina. Hayes did not respond. Butler contacted the leasing office for the apartment complex and confirmed that he had the correct residence address for Hayes. Butler left his business card in the door of Hayes's residence. Butler Aff. ¶ 5.

On the evening of April 5, 2017, Hayes left a voicemail on Butler's work phone. Hayes stated that she received Butler's business card and left her phone number. On April 6, 2017, Butler repeatedly attempted to call Hayes without success. Id. ¶ 6.

On April 11, 2017, Butler attempted to call Hayes throughout the day at the phone number that she provided, but those attempts also were unsuccessful. On April 13, 2017, Butler received a voicemail from Hayes in which she asked Butler to call her before 5:00 p.m. Butler called her twice on this date, and left two voicemails, but received no response to either. Additionally, Butler and another deputy marshal attempted to interview Hayes at her residence, but Hayes did not respond. While Butler attempted to interview Hayes at her residence, Hayes left another voicemail on Butler's work number. Hayes did so, even though Butler repeatedly told Hayes to contact him via his cell phone. In her voicemail, Hayes stated that she had received the text order, and asked Butler to return her call the following morning. See id. ¶¶ 7–10.

On April 13, 2017, Hayes sent Butler several emails. Hayes asked Butler to review several documents and attachments before meeting with her. On April 14, 2017, Butler unsuccessfully attempted to call Hayes numerous times. Butler could not leave any voicemails because Hayes's mailbox was full. See Butler Aff. ¶¶ 11–12.

On April 18, 2017, Butler continued to attempt to call Hayes, but all attempts were unsuccessful. However, on April 18, 2017, Hayes emailed Butler. She wrote: "Fact: Your voice is supercharged with emotion. Opinion: It is totally inappropriate to be that emotional. Gift: I brought you a box of Kleenex with your name on it. Help yourself! With love, Bye. Katrina Hayes." Hayes's email included a photo of a box of Kleenex tissues with Butler's name on it. Id. ¶ 13.

On April 19, 2017, Butler and another deputy marshal attempted to interview Hayes at her residence. Hayes did not answer the door. At approximately 7:45 a.m., two officers from the Cary Police Department arrived at the apartment complex. Both Butler and the deputy marshal identified themselves to the officers and asked if they had been called to 8003 Resident Circle. The Cary police officers stated that they had. Butler then explained to the officers the details of the case. The Cary police officers stated that they would attempt to contact Hayes at her door without Butler or the other deputy marshal being visible to her. The Cary police officers knocked, identified themselves, and Hayes opened the door. After Hayes opened the door, Butler stepped to the door. Hayes stated that she would not speak with Butler and that she and Butler had discussed everything. Butler asked Hayes why she had been avoiding him, and she responded that everything had already been discussed. Hayes also stated that Butler had been rude and hostile towards her in emails and phone messages. In order to help facilitate an interview, the Cary police officers spoke with Hayes inside of her residence, but with the door open. They questioned Hayes regarding her dismissed federal

3

case as well as her intentions towards the clerk's office. Butler also questioned Hayes regarding her statements to the Clerk of Court. Hayes responded that she was a God fearing woman, and that her statement was associated with that fact. See id. ¶ 14.

Nothing in the record suggests Butler ever threatened Hayes, or took any action to intimidate Hayes. Butler also did nothing to cause Hayes any substantial emotional harm, and acted only in the performance of his sworn duties in an effort to serve a copy of a court's order and conduct a preliminary protective investigation. See id. ¶ 15.

On June 9, 2017, Hayes filed a form complaint in Wake County District Court requesting a permanent "no contact" order pursuant to N.C. Gen. Stat. § 50C-1, et seq. [D.E. 1-1]1–2. Hayes also requested a temporary ex parte "no contact" order. [D.E. 1–2] 2. In her complaint, Hayes alleged:

> I was contact (sic) by Bill Butler concerning my calls to a judge chamber (sic) to alert her of the criminal acts the attorneys were involved in. My home is illegally under surveillance along with technical devices. Bill interestingly called me and left a message the day before I went out of town. Bill called me back as soon as I got back in town. Before I could even call Bill he would contact me numerous times a day and left messages with accusatory and aggressive communication. One message he left, he stated he was waiting outside my home for me. I emailed Bill informed him that is aggressiveness (illegible) and I wouldn't speak to him. The next day he showed up knocking aggressively and (illegible) Bill had a folder in his hand but didn't have papers to deliver. This occurred to harass and intimidate me. Bill also misrepresented the reason he was at my home to Cary Police officer after they left my home and presence. Cary Police Department has false statement on a report now due to Bill Butler's errors. (D.E. 1-2, pp.1, 3). Plaintiff both asked for a restraining order to be issued ex parte and alleged the harm to be prevented because "[d]efendant determined that boundaries are something he will not respect."

Id.

A state judicial official found that Hayes failed to prove grounds for issuance of a temporary no-contact order but scheduled a hearing on the request for a permanent no contact order. [D.E. 1-3] 1. On June 22, 2017, Butler removed the action to federal court. [D.E. 1].

4

II.

Butler moves to dismiss Hayes's complaint for lack of subject-matter jurisdiction. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests subject-matter jurisdiction, which is "the court's statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104; see, e.g., Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

Pursuant to the Supremacy Clause, states may not impede federal officials in the exercise of their duties to carry out federal laws. See McCulloch v. Maryland, 17 U.S. 316, 436 (1819); U.S. Const., art. VI, cl. 2. Generally, Supremacy Clause immunity shields federal officers from state laws or prosecution under state law for actions taken in the course of their official duties so long as the actions were reasonably necessary to the performance of those duties. See, e.g., Johnson v. Maryland, 254 U.S. 51, 57 (1920); Ohio v. Thomas, 173 U.S. 276, 284 (1899); Cunningham v. Neagle, 135 U.S. 1, 75 (1890). Accordingly, in such circumstances, federal agents have Supremacy Clause immunity from state law, and both state and federal courts lack jurisdiction to enforce such state laws against a federal agent. See, e.g., Smith v. Cromer, 159 F.3d 875, 879 (4th Cir.1998); Arion v. Sato, No. 12-00464, JMS/KSC, 2014 WL 495423, at * 2–3 (D. Haw. Feb. 6, 2014) (unpublished).

Hayes sought a "no contact" order from a North Carolina district court. As reflected in

5

Hayes's complaint and Butler's affidavit, Hayes knew that Butler was a United States marshal engaged in the performance of his official duty to investigate threats Hayes made to the Clerk of Court and to serve a copy of the court's text order in Hayes I. Butler has immunity from any North Carolina law seeking to restrain him in performing his official duties to investigate Hayes's threat and to serve a copy of the text order. Because the North Carolina state court lacked jurisdiction to enter a "no contact" order that restricted Butler in performing his official duties, this court lacks jurisdiction to issue such an order as well. See e.g., Smith, 159 F.3d at 879; Arion, 2014 WL 495423 at *2–3. Thus, the court grants Butler's motion to dismiss for lack of subject-matter jurisdiction.

### III.

Alternatively, even if the court has subject-matter jurisdiction, Hayes has failed to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests a complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80, 684 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojanit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausib[ility]." Iqbal, 556 U.S. at 678–79. "[N]aked

assertions of wrongdoing," devoid of "factual enhancement," cannot "cross the line between possibility and plausibility of entitlement to relief." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted). A plaintiff armed with nothing more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," cannot proceed into the litigation process. Twombly, 550 U.S. at 555; see Francis, 588 F.3d at 193.

A legally sufficient complaint must meet the standards of Federal Rule of Civil Procedure 8. See Francis, 588 F.3d at 192. Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) exists to ensure that defendants have adequate notice of the nature of the claims against them. See, e.g., Francis, 588 F.3d at 192.

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Iqbal, 556 U.S. at 677–83; Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis, 588 F.3d at 193. Although a court must liberally construe a pro se plaintiff's allegations, it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011); see Giarratano, 521 F.3d at 304 n.5. "The 'special judicial solicitude' with which a district court should view . . . pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." Weller v. Dep't of Soc. Servs.,

7

901 F.2d 387, 391 (4th Cir. 1990). Every party—pro se or otherwise—must comply with the Federal Rules of Civil Procedure. See Iqbal, 556 U.S. at 678; Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984) (per curiam).

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

N.C. Gen. Stat. § 50C–7 authorizes a permanent civil no-contact order if "the victim has suffered unlawful conduct committed by the respondent." The unlawful conduct necessary to support the issuance of a permanent no-contact order pursuant to N.C. Gen. Stat. § 50C–7 must consist of either nonconsensual sexual conduct or stalking. See N.C. Gen. Stat. § 50C–1(7).

Hayes contends that Butler engaged in stalking. A determination that a defendant engaged in stalking requires a finding that the defendant engaged in harassing behavior, N.C. Gen. Stat. § 50C–1(6), which consists of "[k]nowing conduct ... directed at a specific person that torments, terrorizes, or terrifies that person and that serves no legitimate purpose." N.C. Gen. Stat. § 14–277.3A(b)(2). Moreover, the defendant must have engaged in harassing behavior on more than one occasion and have acted with the intent to either place the person in reasonable fear for the person's safety or the safety of the person's immediate family or close personal associates, or cause that person to suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment and that in fact causes that person substantial emotional distress.

8

See N.C. Gen. Stat. § 50C–1(6).

Hayes alleges only that Butler contacted her multiple times, by phone and email, in an accusatory and aggressive manner. Hayes also described one instance where Butler stood outside her residence with a folder in his hand. Hayes does not plausibly allege that Butler's alleged actions "torment[ed], terrorize[d], or terrifie[d]" Hayes as required by N.C.G.S. § 14-277.3A(b). Thus, even if the court has jurisdiction, the claims fails. See, e.g., Twombly, 550 U.S. at 555; Teague v. Meredith, No. 5:10-CV-39-RLV, 2011 WL 2791253, *4 (W.D.N.C. July 14, 2011) (unpublished).

Alternatively, Hayes acknowledges that she knew why Butler attempted to contact her. [D.E. 1-1] 1 ("I was contact by [Defendant] concerning my calls to a judge chamber...."). Furthermore, the clerk's office for the Eastern District of North Carolina mailed Hayes a copy of the text order to the mailing address Hayes listed in her complaint. [D.E. 40] Exhibit A, ¶ 10; [D.E. 1-1] 1. Thus, before filing her complaint, Hayes knew that the court in her federal case ordered the United States Marshal to personally serve her a copy of the text order. Butler was a United States marshal engaged in his official duty of personally serving a copy of the text order as ordered by the court and investigating Hayes's threats. As such, Butler had a legitimate purpose. See Teague, 2011 WL 2791253, at *4. Thus, Hayes's complaint fails to plausibly allege that Butler's contact with her served no legitimate purpose.

IV.

In sum, the court GRANTS defendant's motion to dismiss [D.E. 11]. The clerk shall close the case.

SO ORDERED. This _8_ day of September 2017.

JAMES C. DEVER III
Chief United States District Judge

9